# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 16 2017, 11:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Glen E. Koch II
Boren, Oliver & Coffee, LLP
Martinsville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Marjorie Newell
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Termination of the Parent-Child Relationship of: W.W. & C.W. (Minor Children),

and

M.W. (Father),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

May 16, 2017

Court of Appeals Case No. 55A01-1702-JT-225

Appeal from the Morgan Circuit Court

The Honorable Matthew G. Hanson, Judge

Trial Court Cause Nos.
55C01-1607-JT-289
55C01-1607-JT-290

**Baker, Judge.**

[1] M.W. (Father) appeals the trial court's order terminating the parent-child relationship between Father and his children, W.W. and C.W. Father argues that there is insufficient evidence supporting the termination order. Finding the evidence sufficient, we affirm.

## Facts

[2] Father is the adoptive father of W.W., who was born on March 4, 2003, and C.W., who was born on February 10, 2004. Before the Department of Child Services (DCS) became involved with this family, Father was the noncustodial parent and exercised parenting time every other weekend.

[3] In June 2014, the children's mother and stepfather[1] entered into a program of Informal Adjustment with DCS after they admitted to using methamphetamine and opiates and to being asleep while C.W. was wandering around outside unsupervised for several hours. The program of Informal Adjustment was unsuccessful and, on September 11, 2014, DCS filed a petition alleging that the children were children in need of services (CHINS), removed the children, and placed them in Father's care and custody.

[4] On September 27, 2014, Father and the children were involved in a serious car accident. The family case manager (FCM) testified that the accident occurred because Father was under the influence of drugs and alcohol while driving. Tr.

---

[1] The mother and stepfather have relinquished their parental rights and do not participate in this appeal.

p. 48, 69-70.  As a result of the accident, (1) C.W. suffered a broken pelvis and femur and was placed in a medically induced coma; (2) W.W. suffered minor injuries; and (3) Father suffered several broken bones and a punctured lung and was placed in a medically induced coma.  DCS removed the children from Father's care on September 28, 2014, because Father had endangered them and was unable to provide for their care while hospitalized.  On October 2, 2014, the trial court found the children to be CHINS.  On December 29, 2014, the trial court entered a dispositional decree ordering Father to, among other things, participate in home-based counseling, complete a substance abuse assessment and comply with all recommendations, submit to random drug and alcohol screens, and participate in visitation with the children.

[5]  Father was released from an injury rehabilitation facility on February 14, 2015.  He admits that following his release, he "did not engage with DCS to perform any of the duties that [he was] required to do."  *Id.* at 89.  Specifically, his participation with services was limited to the following:

- From May to August 2015, Father worked with a family support specialist on life skills, including budgeting and providing adequate meals for the children.  Father was not motivated to participate, did not make progress, and on one occasion said that he "didn't care what DCS wanted and was not going to do . . . what they requested."  *Id.* at 14.
- Also during the summer of 2015, he met with a therapist on three occasions.  The therapist recommended that Father participate in intensive outpatient substance abuse treatment but Father refused.  Father made no progress, in part because he refused to admit to substance abuse issues, and the service was closed unsuccessfully after Father stopped attending.

- In October 2015, Father completed a substance abuse assessment, which recommended that he participate in intensive outpatient substance abuse treatment and sign releases regarding his multiple medications. Father refused to participate in treatment and refused to sign any releases.
- He visited with his children once or twice a month for two or three months before requesting to stop his visits. During visits, he struggled to engage with the children and did not provide adequate food for the children. On December 17, 2015, he signed a letter saying, "I want to stop my visits with both my children." DCS Ex. 37. He has not visited with his children since December 2015 and has never requested that his visits be resumed.

Father has also failed to maintain consistent contact with the FCM and has never participated in random drug screens. He admitted to stating on multiple occasions that he did not want to participate in this case, with services, or with visitation. Father has not participated with any DCS services since December 2015. On July 15, 2016, he submitted a letter to the trial court indicating that he wished to relinquish his parental rights. DCS Ex. 38.

[6] Father struggles with drug and alcohol abuse. In June 2015, Father was charged with Level 6 felony operating a vehicle while intoxicated.[2] He was eventually convicted and sentenced to two years of probation. When asked about this conviction at the termination hearing, Father denied that he has a problem with alcohol use. The individual who administered Father's October 2015 substance abuse assessment testified as follows:

---

[2] This charge does not stem from the September 2014 accident; it appears as though no charges were filed related to that incident.

- Father has moderate to severe alcohol abuse, mild cannabis abuse disorder, antisocial personality disorder, and post-traumatic stress disorder. Tr. p. 23.
- Father used alcohol almost daily and refused to cut back regardless "of potential loss and current losses with family and [a] bunch of ultimate impairments[.]" *Id.* at 24.
- He was taking over a dozen different medications; mixing those with alcohol could be deadly.
- Father was occasionally using marijuana and disclosed a history of methamphetamine use.

Father participated with substance abuse treatment and random drug screens through probation, but he never informed DCS either of his criminal case or that he was receiving services through probation. He refused to sign an authorization allowing DCS to confirm his claims with probation.

[7] On July 27, 2016, DCS filed a petition to terminate Father's parental rights. The trial court held a factfinding hearing on October 3, 2016, January 5, 2017, and January 10, 2017. At the time of the hearing, the children were placed with their step-grandfather, who plans to adopt them. The children are doing well in that placement and in school. W.W. testified at the hearing that she wanted to remain where she was and did not want to return to Father's care because she does "not really" feel safe with him. *Id.* at 38-39. On January 11, 2017, the trial court issued an order terminating Father's parental rights. Father now appeals.

# Discussion and Decision

## I. Standard of Review

[8] Father argues that there is insufficient evidence supporting the trial court's termination order. Our standard of review with respect to termination of parental rights proceedings is well established. In considering whether termination was appropriate, we neither reweigh the evidence nor assess witness credibility. *K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1229 (Ind. 2013). We will consider only the evidence and reasonable inferences that may be drawn therefrom in support of the judgment, giving due regard to the trial court's opportunity to judge witness credibility firsthand. *Id.* Where, as here, the trial court entered findings of fact and conclusions of law, we will not set aside the findings or judgment unless clearly erroneous. *Id.* In making that determination, we must consider whether the evidence clearly and convincingly supports the findings, and the findings clearly and convincingly support the judgment. *Id.* at 1229-30. It is "sufficient to show by clear and convincing evidence that the child's emotional and physical development are threatened by the respondent parent's custody." *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 148 (Ind. 2005).

[9] Indiana Code section 31-35-2-4(b)(2) requires that a petition to terminate parental rights for a CHINS must make the following allegations:

>    (A)    that one (1) of the following is true:

(i)     The child has been removed from the parent for at least six (6) months under a dispositional decree.

(ii)    A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

(iii)   The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B)     that one (1) of the following is true:

(i)     There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii)    There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii)   The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C)     that termination is in the best interests of the child; and

(D)    that there is a satisfactory plan for the care and treatment of the child.

DCS must prove the alleged circumstances by clear and convincing evidence. *K.T.K.*, 989 N.E.2d at 1230.

# II. Best Interests

[10] Father's sole argument on appeal is that the trial court erred by finding that DCS proved by clear and convincing evidence that termination is in the best interests of the children. He highlights the following evidence: (1) he has participated with substance abuse treatment and random drug screens through probation; (2) he is receiving psychiatric treatment for post-traumatic stress; (3) at the time of the termination hearing, he no longer wished to relinquish his parental rights; (4) he had a stable home; and (5) DCS did not attempt to dissuade him when he decided to stop participating in services and visiting with his children. This amounts, essentially, to a request that we reweigh the evidence, which we are not permitted to do. Instead, we must focus on the evidence supporting the trial court's conclusion that DCS proved that termination is in the children's best interests and evaluate whether that evidence is sufficient.

[11] For over two years, Father failed to comply with the trial court's dispositional order in the CHINS case. He only minimally participated in therapy, failed to complete random drug screens, and refused two separate providers' recommendation that he participate in substance abuse treatment. He visited

with his children only a handful of times, and during those visits, he struggled to engage with the children. In December 2015, he asked that the visits stop, and he has not visited with his children since that time. He repeatedly expressed to service providers and DCS that he had no desire to participate with services or in the case, and wrote a letter to the trial court just three months before the termination hearing expressing his desire to relinquish his parental rights.

[12] We acknowledge that Father has experienced physical and mental trauma as a result of the September 2014 accident. We also acknowledge his apparent efforts to participate in substance abuse treatment through probation.[3] But he has had nearly two years to make progress in the CHINS case and has failed to do so. As the trial court found, "when facing jail, he can comply. When faced with losing his kids he simply will not." Appellant's App. p. 32. His last-minute change of heart regarding his relationship with his children was sadly too late to overcome the years of failure to participate and statements that he did not want to parent his children. Given this record, we find that the trial court did not err by concluding that DCS proved by clear and convincing evidence that termination is in the children's best interests.

---

[3] We note that at the termination hearing Father still insisted that he does not have a problem with alcohol use, causing us to question whether Father has truly benefited from the treatment he has received through probation. Tr. p. 90.

[13]     The judgment of the trial court is affirmed.

Barnes, J., and Crone, J., concur.